722 P.2d 1183

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Gregg C. MANKILLER,
Defendant-Appellant.**

No. 8406.

Court of Appeals of New Mexico.

May 27, 1986.

Certiorari Denied July 23, 1986.

Paul G. Bardacke, Atty. Gen., Alicia Mason, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Martha A. Daly, Rothstein, Bailey, Bennett, Daly & Donatelli, David J. Berardinelli, Berardinelli & Martinez, Santa Fe, for defendant-appellant.

## OPINION

ALARID, Judge.

Defendant appeals his conviction of two counts of contributing to the delinquency of a minor, contrary to NMSA 1978, Section 30–6–3 (Repl.Pamp.1984), and two counts of enticement of a child, contrary to NMSA 1978, Section 30–9–1 (Repl.Pamp. 1984). Defendant was subsequently charged with, and found guilty of, being an habitual criminal, contrary to NMSA 1978, Section 31–18–17 (Cum.Supp.1985). Issues not briefed are deemed abandoned. *State v. Vogenthaler*, 89 N.M. 150, 548 P.2d 112 (Ct.App.1976). The issues raised are:

I. Whether defendant's convictions are supported by substantial evidence.

II. Whether procedural due process was violated.

III. Whether there was prosecutorial misconduct.

IV. Whether the trial court should have granted a continuance or a mistrial after introduction of evidence establishing commission of the offenses on dates other than those alleged in the indictment.

V. Whether the trial court erred in refusing defendant's requested instruction defining the phrase "on or about."

VI. Whether defendant is entitled to a new trial because of an unauthorized jury contact during deliberations.

VII. Whether the admission into evidence of nude photographs of one of the minor victims was prejudicial.

VIII. Whether there was sufficient evidence to support defendant's enhanced sentence as an habitual offender.

We affirm defendant's convictions of contributing and enticement with respect to James S. We reverse defendant's convictions of contributing and enticement with respect to Randy S. We affirm on all other issues raised.

## FACTS

The state's witnesses were 15-year-old Randy S. and his 13-year-old brother, James S. Defendant was charged with three counts relative to each boy: contributing to the delinquency of a minor, enticement, and criminal sexual contact. The indictment charged that the offenses involving Randy S. occurred "on or about April 28, 1984," and that the offenses involving James S. occurred "on or about May 19, 1984."

At trial, neither witness could testify with certainty that the offenses actually occurred on the dates charged. Randy S. testified that he accompanied defendant to

his motel room several times between February and June of 1984, and that on each occasion, defendant provided him with alcohol. He testified that on one evening, after he had consumed one-and-a-half six packs of beer, defendant touched his genitals. He could not recall the date on which this contact occurred, but said he was positive that it did not occur on April 28, as charged in the indictment (based on his grand jury testimony), or anytime in April 1984. He said the incident occurred "around June," and when pressed to be more specific, he said that June 16 was the more proximate date. He acknowledged having given different dates to the police and to the grand jury.

James S. similarly testified that he accompanied defendant to his motel on five or six different occasions, and that on one such occasion, after he had been provided alcohol, defendant touched his genitals. Like Randy S., James S. could not remember when the touching incident occurred. However, he was unequivocal that the incident did not occur on May 19, as charged in the indictment, since that date was his brother's birthday and he would have remembered had it occurred then. He testified, however, that the incident did occur sometime in the month of May.

Defendant presented alibi evidence which showed that he was out-of-state when the offenses allegedly occurred. The evidence established that defendant was incarcerated in Florida from March 30, 1984 through May 15, 1984. Following his incarceration, defendant returned to New Mexico, but the evidence showed that he traveled by car and did not arrive in Santa Fe until Sunday evening, May 20. Defendant's evidence showed that he remained in Santa Fe until May 23, at which time, he and a traveling companion left the state and traveled to Tulsa, Oklahoma. Evidence presented by the state showed that defendant subsequently returned to New Mexico and stayed at the King's Rest Motel in Santa Fe from June 4 to June 11.

The jury returned guilty verdicts on the counts of contributing and enticement, but was deadlocked on the two criminal sexual contact counts, and a mistrial was subsequently declared on those charges.

## I. WHETHER DEFENDANT'S CONVICTIONS ARE SUPPORTED BY SUBSTANTIAL EVIDENCE.

Defendant's attack on the sufficiency of the evidence has both a factual and a legal premise. We address the legal aspect first. Defendant contends that when the state elects to proceed on a specific date, and so alleges in the charging document, that the date specified becomes a material allegation of the offense charged, thereby precluding the state from establishing guilt based on a different date. We agree.

In *State v. Salazar*, 86 N.M. 172, 521 P.2d 134 (Ct.App.1974), this court reversed the defendant's conviction because the instructions did not limit the jury's consideration to the specific dates alleged in the indictment. *Salazar* holds that, while the time of the offense may be unnecessary, and therefore, considered surplusage under NMSA 1978, Crim.P.Rule 8(a) (Repl.Pamp. 1985), the procedural rule does not apply where the indictment has alleged a specific time and where the facts indicate potential prejudice to the defendant if the allegation is not treated as material. In *Salazar*, as in this case, the prejudice to the defendant arose from the fact that the evidence at trial showed that the offenses occurred on dates other than those specifically alleged in the indictment, leading to the possibility that the defendant was convicted on the basis of the other uncharged offenses. *See also State v. Rodman*, 44 N.M. 162, 99 P.2d 711 (1940). The *Salazar* court determined that the adoption of the Rules of Criminal Procedure did not modify or affect the validity of *State v. Rodman* or *State v. Crump*, 82 N.M. 487, 484 P.2d 329 (1971), decisions which also limited the state to establishing the specific facts and dates alleged in an indictment. *See also State v. Lankford*, 92 N.M. 1, 582 P.2d 378 (1978).

Because the indictment in this case alleged specific time periods, we are re-

quired to determine if there is substantial proof that the offenses occurred as charged, "on or about April 28" and "on or about May 19." Black's Law Dictionary defines "on or about" as "approximately" and "without substantial variance from" the stated date. Accordingly, we conclude that the evidence substantially supports the convictions involving James S. Those offenses were alleged to have occurred "on or about May 19," and the evidence showed that defendant was in Santa Fe from May 20 to May 23. Moreover, the victim, James S., consistently stated and testified at trial that the incidents occurred some time in the month of May. The foregoing is substantial evidence in support of the conviction. *See State v. Lankford*, 92 N.M. 1, 582 P.2d 378 (1978).

We further conclude, however, that the convictions involving Randy S. are not supported by the evidence. Those offenses were alleged to have occurred "on or about April 28." However, defendant's alibi evidence showed that defendant was out of the state for the three weeks preceding and three weeks following April 28. We acknowledge that the jury was not required to believe defendant's alibi. *State v. Vigil*, 87 N.M. 345, 533 P.2d 578 (1975). But the victim's own account of when the incidents occurred varied widely, from April 28, the date which he gave to the grand jury, to June 16, the most approximate date he could recall at trial. The only evidence that the offenses actually occurred "on or about April 28" was the victim's prior statement to the grand jury, a statement which he specifically disclaimed at trial, saying that he never told the grand jury that April 28 was the "correct" date, and saying he was now positive the incidents did not occur on April 28, or anytime in the month of April.

Substantial evidence is such evidence as is acceptable to a reasonable mind as adequate support for a conviction. *State v. Robinson*, 94 N.M. 693, 616 P.2d 406 (1980). Considering the other evidence presented at trial, and the victim's own repudiation of his prior statement to the grand jury, the prior statement cannot be considered adequate evidentiary support for defendant's convictions of contributing and enticement with respect to Randy S. Defendant's conviction on those counts is reversed for failure of proof. His convictions for contributing and enticement with respect to James S. are affirmed.

## II. DUE PROCESS: LACK OF NOTICE AND VARIANCE BETWEEN THE INDICTMENT AND THE PROOF AT TRIAL.

After defendant was indicted, he filed a request for a statement of facts, pursuant to NMSA 1978, Crim.P. Rule 9 (Repl.Pamp. 1980). Two weeks later, defendant filed a notice of alibi which detailed the particulars of his alibi, including the fact of his incarceration in Florida. In response to defendant's request for a statement of facts, the state asserted, and the trial court found, that the state's "open file policy" eliminated any need for a statement of facts. The state, however, additionally asserted, during the two pretrial hearings concerning the request, that the state would consider itself "bound to the dates in the indictment." Contrary to this assurance, in opening statement at trial, the prosecution said it would show that the acts charged occurred sometime between January 1 and July 4, 1984. Defendant objected and renewed his request for a statement of facts. He also requested a continuance, which the trial court denied.

Following Randy S.'s testimony at trial that the offenses involving him did not occur in April, as charged, defendant moved for a directed verdict, alleging a fatal variance between the indictment and the evidence. Alternatively, defendant moved for acquittal based on the prosecution's misconduct in breaching its pretrial pledge to be bound by the dates in the indictment. The state, in turn, moved to amend the indictment to conform to the evidence. All motions were denied by the trial court. Defendant claims the denial of his various motions violated procedural due process.

In our jurisdiction, it is well-established that a charging document need not allege the time or date of the offense charged, *"unless such allegations are necessary to give the defendant notice of the crime charged."* (Emphasis added.) NMSA 1978, Crim.P.R. 8(a)(1) (Repl.Pamp. 1980). *See State v. Foster,* 87 N.M. 155, 530 P.2d 949 (Ct.App.1974) (decided prior to the adoption of Crim.P.R. 8(a), but decided in conformity with a similar statute); *compare State v. Dobbs,* 100 N.M. 60, 665 P.2d 1151 (Ct.App.1983) (decided on Crim.P.R. 7(a) grounds). A charging document *should* contain information sufficient to enable defendant to prepare a defense and to assure that his conviction or acquittal will be res judicata against a subsequent prosecution for the same offense. *State v. Foster; State v. Lott,* 73 N.M. 280, 387 P.2d 855 (1963). *See also State v. Carr,* 95 N.M. 755, 626 P.2d 292 (Ct.App.), *cert. denied,* 95 N.M. 669, 625 P.2d 1186 (1981); *State v. Selgado,* 78 N.M. 165, 429 P.2d 363 (1967).

In *State v. Fears,* 659 S.W.2d 370, 374 (Tenn.Ct.App.1983), a case involving aggravated rape upon a child in which there was evidence of multiple acts but no particular date was alleged, the court found the state had nonetheless particularized the offense by electing to prosecute on the oral, rather than the vaginal, intrusion. *Dobbs, Carr* and *Selgado* are authority for the same proposition in this jurisdiction. In the case at bar, the charges were particularized by reference to an approximate time period, "on or about" a specific date, and were further particularized by the identification of specific victims and specific conduct. Defendant was charged with three offenses relative to each victim, and the offenses in each case were confined to the same time frame. Both Randy S. and James S. testified that while they accompanied defendant to his hotel several times, and while they were provided alcohol and pornographic materials on each occasion, it was on only one of those occasions that they were provided alcohol and pornographic materials, *and* touched by defendant. Thus, defendant was put on notice that he was being tried for those instances of contributing and enticement which occurred when he also allegedly touched the victims' genitals. We conclude that the indictment contained enough specificity to give defendant notice of the crimes charged.

We agree with defendant that there was a fatal variance between the crimes charged with respect to Randy S., and the evidence presented at trial. Defendant could not reasonably have anticipated, from the specific time period alleged in the indictment, that the evidence at trial would show the offenses occurring nearly two months later. *See State v. Ross,* 100 N.M. 48, 665 P.2d 310 (Ct.App.1983). The error is remedied by our reversal of defendant's convictions on those counts for failure of proof.

Finally, defendant argues that he was prejudiced by the trial court's denial of his request for a statement of facts. It is well-settled in New Mexico that a statement of facts is generally not necessary where the prosecutor maintains an "open file" policy. *State v. Dobbs; State v. Hicks,* 89 N.M. 568, 555 P.2d 689 (1976); *State v. Coulter,* 84 N.M. 647, 506 P.2d 804 (Ct.App.1973). Defendant claims the open file policy was insufficient, under the circumstances, given his intent to present an alibi defense and the victims' inability to recall specific dates. We disagree. As in *Dobbs* and *Coulter,* defendant here was permitted to depose the victims and their mother prior to trial, and was able to test the victims' ability to recall the dates involved. There was no abuse of discretion in the trial court's denial of defendant's motion.

## III. PROSECUTORIAL MISCONDUCT.

Defendant urges this court to find a binding agreement in the prosecutor's pretrial assurances that it was bound to the dates contained in the indictment, and to further find prosecutorial misconduct because the "agreement" was breached. We decline to do so.

The facts of this case do not reflect a binding agreement in the nature of a "bargain" or a reciprocal undertaking. *See e.g., State v. Trammel,* 100 N.M. 543, 673 P.2d 827 (Ct.App.1983); *State v. Lord,* 91 N.M. 353, 573 P.2d 1208 (Ct.App.), *cert. denied,* 91 N.M. 491, 576 P.2d 297 (1978). Rather, in response to defendant's motion for a statement of facts, the prosecution replied that one was not necessary, and further volunteered that the prosecution considered itself "bound" to the dates contained in the indictment. The trial tapes indicate that the prosecutor's pledge was not a factor in the trial court's decision to deny defendant's motion. The motion was denied on grounds that an "open file" policy is preferable to requiring statements of fact, and that requiring a statement of facts under the circumstances would be "exalting form over substance" since all pertinent facts, including the fact of defendant's alibi, were already known to both sides.

 We conclude that no binding agreement can be inferred from these facts. Nor do we find that the prosecutor's conduct was prejudicial to defendant. Since the trial court denied the state's motion to amend the indictment, the prosecutor was, in fact, bound to the dates contained in the indictment.

## IV. MOTIONS FOR A CONTINUANCE OR A NEW TRIAL.

Defendant claims the court erred in denying a continuance after the admission of evidence showing that the offenses occurred on dates other than those alleged in the indictment. Defendant relies for relief on Crim.P.Rule 7(c), which permits the trial court to grant a continuance after an indictment or information has been amended to conform to the evidence. We observe that the trial court, in fact, denied the state's motion to amend the indictment.

 Even assuming an "implicit" amendment of the indictment, defendant does not show that the denial of a continuance prevented him from gathering relevant evidence or precluded him from presenting a defense to the charges. *Compare State v. Wilburn,* 90 N.M. 436, 564 P.2d 1000 (Ct. App.1977); *State v. Armijo.* The record, in fact, belies defendant's broad assertion that it was "not until the day of trial" that he first learned that the offenses may have occurred as early as February or as late as June. Defendant knew the victims had made conflicting statements regarding the dates involved. He also knew, from having deposed the victims and their mother prior to trial, that the boys had great difficulty in remembering the dates involved. Defendant had access to the prosecutor's file in the case, and he was aware that the file included three separate registration cards from his stays at the King's Rest Motel in Santa Fe during February, March and June of 1984. Defendant knew that the victims had told police the incidents occurred at the King's Rest Motel. He also knew that the prosecution intended to call the manager of the King's Rest Motel as a witness. These facts sufficiently alerted defendant to the state's intention of presenting evidence covering at least those portions of February, March and June of 1984, corresponding to his stay at the King's Rest.

Whether a continuance should be granted in a criminal trial "depends entirely" upon the particular facts of each case, and the question is therefore addressed to the sound discretion of the trial court. *State v. Casteneda,* 97 N.M. 670, 642 P.2d 1129 (Ct.App.1982); *State v. Hargrove,* 81 N.M. 145, 464 P.2d 564 (Ct.App.1970). In this case, defendant's motion was made after the jury was impaneled, and jeopardy had attached. When this is considered, together with the foregoing lack of substantial prejudice to defendant, it is clear that the trial court did not abuse its discretion.

## V. JURY INSTRUCTIONS.

The trial court refused two jury instructions tendered by defendant which defined "on or about." Defendant claims that he was entitled to a definitional instruction defining the term, since under the facts of the case: (1) the term "on or about" had a technical meaning; (2) the dates alleged in

the indictment became an essential element of the charges; and (3) a definitional instruction was necessary in order to properly set forth his theory of the case.

In *State v. Carnes*, 97 N.M. 76, 636 P.2d 895 (Ct.App.1981), this court considered the question of when it is error for the court to refuse a proper definitional instruction tendered by the defense. The court said it was error when (1) there was no instruction defining an element of a criminal offense, (2) the element was not adequately covered by the instructions given, and (3) the element being defined was a technical term such as "mental disease" or mental "competency." However, the court found there was no error in refusing to instruct on a term or word having a common meaning such as "hostage," or "entrusted," *State v. Moss*, 83 N.M. 42, 487 P.2d 1347 (Ct.App. 1971), or "held to service," *State v. Aquirre*, 84 N.M. 376, 503 P.2d 1154 (1972).

 Here, we are not persuaded that the phrase "on or about" requires amplification or definition in order to be understood. Nor do we find that the definitional instructions were necessary in order for defendant to argue his theory of the case. The instructions, as given, achieved the same effect. The jury was instructed to find that the offenses occurred "on or about" April 28, and "on or about" May 19. In closing argument, defendant was able to impress upon the jury the fact that his alibi defense covered these dates and that "on or about" should enlarge the time frame by only a day or two. Accordingly, there was no abuse of discretion in the trial court's refusal of the tendered instructions.

## VI. UNAUTHORIZED JURY CONTACT DURING DELIBERATIONS.

Following his conviction, defendant moved for a new trial on the basis of information revealed in post-trial interviews with the jurors. According to one juror, during the course of deliberations, she asked the bailiff to obtain a definition of the phrase, "on or about." The juror stated, in a sworn affidavit, that the bailiff returned shortly thereafter and informed the jurors that it was a matter for the jury to determine on its own.

At a hearing on the motion, the trial judge said he was unaware of the communication, and that the bailiff himself claimed to have no recall of such a contact. The state pointed out that the communication, if it occurred, was contrary to the procedure set forth by the court prior to deliberations, providing that any attempted communication should be in writing and should be transmitted to the court through the jury foreman. After hearing argument, the court denied defendant's motion for a new trial, finding that even if the communication did occur, it was not prejudicial to defendant.

 Both sides agree that if a communication occurred, it was unauthorized under the structures of NMSA 1978, Crim. P.Rule 43 (Repl.Pamp.1989). When an improper jury communication is shown, due process requires that prejudice be presumed. *State v. Doe*, 101 N.M. 363, 683 P.2d 45 (Ct.App.), *cert. denied*, 101 N.M. 276, 681 P.2d 61 (1984). The burden is on the party resisting a new trial to demonstrate that the unauthorized communication did not prejudice the verdict. *State v. Ho'o*, 99 N.M. 140, 654 P.2d 1040 (Ct.App.), *cert. denied*, 99 N.M. 148, 655 P.2d 160 (1982).

 Here, the trial court determined that if the unauthorized communication occurred, it was not prejudicial since the result was the same as it would have been had the communication been properly authorized; the trial court would have advised the jury to proceed on the instructions as given because the phrase "on or about" could not be redefined beyond its ordinary meaning. Such a response would have been an acceptable exercise of the trial court's discretion. *See State v. Melton*, 102 N.M. 120, 692 P.2d 45 (Ct.App. 1984). In *Melton*, defendant moved for a mistrial based on the fact that one of the jurors had obtained dictionary definitions for certain terms and disclosed them to fellow jurors. This court held that since

the dictionary definitions did not vary from the usual and ordinary meaning to be accorded the statutory language, the presumption of prejudice was overcome, and thus, the trial court had not abused its discretion in denying a new trial. Here, in contrast to *Melton,* no extraneous information was brought to the jury's attention. The trial court's position was that no definition would have been given, even if the communication had been as authorized under Crim.P.Rule 43(a). Since no definition was given, and since none would have been given in any event, the trial court did not err in finding that the presumption of prejudice had been overcome.

## VII. ADMISSION OF PHOTOGRAPHS.

The trial court admitted two sexually explicit, nude photographs of James S., which were seized from defendant's motel room. The photos were admitted as probative of defendant's intent to commit the offenses involving James S. Defendant claims that the court's rationale was improper since "[t]here is no evidence in the record to support the trial court's theory that a person who takes photographs such as these is more likely to commit the offense of which Mr. Mankiller was accused."

Defendant is mistaken. In *State v. Minns,* 80 N.M. 269, 454 P.2d 355 (Ct. App.1969), this court recognized an exception to the general prohibition against using collateral crimes evidence to prove the specific crime charged. Under *Minns,* evidence of other, or similar, sex offenses committed by a defendant upon the prosecuting witness is admissible to show defendant's lewd and lascivious disposition toward the prosecuting witness and also as corroborating evidence.

We also disagree with defendant that the prejudicial impact of the photographs is outweighed by their probative value. The photographs were relevant for the purpose of proving identity, which defendant had placed in issue with his alibi claim. *See State v. Beachum,* 96 N.M. 566, 632 P.2d 1204 (Ct.App.1981). The pictures were also corroborative of the victim's testimony that defendant asked him to prove himself by masturbating in front of him. *State v. Trujillo,* 84 N.M. 593, 506 P.2d 337 (Ct.App.1973). Finally, as argued by the state, the photographs were probative of whether defendant had a "pedophilic interest" reflecting upon his intent to commit the crimes charged. *See State v. Dobbs.*

## VIII. HABITUAL OFFENDER ENHANCEMENT.

Following his conviction, defendant was found guilty of being an habitual offender. Defendant was previously convicted in Florida for the crime of exposing harmful materials to minors. At the time of his conviction, the offense was a second-degree felony in Florida. However, the offense was not then a felony in New Mexico. Thus, to qualify as a "prior felony conviction" under the New Mexico habitual offender statute, the prosecutor had to establish that the offense was punishable at the time of defendant's conviction by death or imprisonment of more than one year. *See State v. Harris,* 101 N.M. 12, 677 P.2d 625 (Ct.App.1984); NMSA 1978, § 31–18–17(A)(2) (Cum.Supp.1985). Defendant's sole argument on appeal is that the state failed to prove that the prior conviction was punishable under Florida law by more than one year's imprisonment. We disagree.

The Florida judgment and sentence, which was entered into evidence, shows that defendant pleaded nolo contendre to the charge and was placed on probation for five years on condition that he complete a sixty-day jail sentence. While the judgment and sentence indicates that the offense was a second degree felony under Florida law, the statutory penalty is not reflected. However, during a pretrial motion for bail reduction, defendant acknowledged to the court that he faced a fifteen-year sentence in Florida for the prior conviction. At the enhancement hearing, the prosecutor stated, without objection, that the Florida penalty for a second degree felony is comparable to that of New Mexico.

The Florida judgment and sentence was prima facie proof of defendant's prior conviction. *See State v. Garcia,* 92 N.M. 730, 594 P.2d 1186 (Ct.App.1978). The burden was then on defendant to show that the prior conviction did not qualify under the New Mexico habitual offender statute. *Cf. State v. Dawson,* 91 N.M. 70, 570 P.2d 608 (Ct.App.1977). Defendant's only objection at the habitual proceeding was that the enhanced sentence would add to an already harsh sentence. Thus, the argument he advances on appeal was never raised before the trial court and was, therefore, waived. *See State v. Lott.* His enhancement as an habitual offender is affirmed.

Defendant's convictions for contributing and enticement with respect to Randy S. are reversed for failure of proof. His convictions with respect to James S. are affirmed, and the trial court is affirmed on all other issues raised. This cause is reversed in part, affirmed in part, and remanded to the trial court for further action consistent with this opinion.

**IT IS SO ORDERED.**

HENDLEY, C.J., and MINZNER, J., concur.