**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                            **NO. 28,976**

**WILLIE SKINNER,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Charles Cruse Currier, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**CASTILLO, Judge.**

    Defendant was convicted by jury on one count of criminal sexual penetration of a minor.  [RP 197]  He raises seven issues on appeal.  [DS 6-8]  This Court issued

a calendar notice proposing to affirm on all issues, and Defendant filed a memorandum in opposition to our proposed decision. Unpersuaded, we affirm.

**A.     Preliminary Hearing**

Defendant argues that because the magistrate court did not conduct a preliminary hearing within ten days as required by Rule 6-202 NMRA, the magistrate court should have granted his motion to dismiss. [DS 7] In *State v. Tollardo*, 99 N.M. 115, 654 P.2d 568 (Ct. App. 1982), this Court concluded that the rule "does not deprive the magistrate court of jurisdiction if the time limits . . . are not precisely followed." *Id.* at 116, 654 P.2d at 569. The Court continued to hold that "[d]ismissal is not the proper remedy for a delay in holding a preliminary examination when prejudice to the defendant has not been shown." *Id.* at 117, 654 P.2d at 570.

Defendant challenges the holding in *Tollardo*, arguing that it grafts a "non-stated requirement of prejudice before any relief is affordable under the rule" and that *Tollardo* rule renders Rule 6-202 meaningless. [DS 10] We decline to reach the validity of *Tollardo* for two reasons. First, Defendant did not make this argument to the magistrate court in his motion to dismiss and, as a result, it is not preserved. [RP 039] Second, the plain language of Rule 6-202(D) explains that "[f]ailure to comply with the time limits set forth in this paragraph shall not affect the validity of any indictment for the same criminal offense." Based on this language, dismissal of

charges was not contemplated as a remedy for the failure to bring an evidentiary hearing within ten days of charging.

**B.    Bind-over Order**

Defendant also contends that there was insufficient evidence to support binding the case over to district court and that the district court wrongfully denied his motion to quash the bind-over. [DS 7] In its letter decision on Defendant's motion, the district court concluded that "[i]n order to grant the Defendant's [m]otion, this [c]ourt would have to engage in a complete review of the evidence." [RP 085] Such a review is foreclosed by *State v. Foulenfont*, 119 N.M. 788, 895 P.2d 1329 (Ct. App. 1995), in which this Court established that a district court may dismiss a criminal matter on a dispositive legal issue, as long as the district court was not required to make any factual determinations. *Id.* at 790, 895 P.2d at 1331.

The district court thus had the authority to quash the bind-over only if there were no disputed facts and only questions of law at issue. Our Courts have applied this rule narrowly. For example, in *Foulenfont*, the state "never disputed [the d]efendants' characterization of the factual predicate underlying the charges" and "declined the district court's invitation to propose additional facts to be included in the record." *Id.* In *State v. Gomez*, 2003-NMSC-012, 133 N.M. 763, 70 P.3d 753, our Supreme Court concluded that even though the state did not argue that additional

3

evidence existed, "pretrial dismissal under Rule 5-601(B) [NMRA] is inappropriate if the [s]tate could reasonably assert the availability of additional evidence." *Id.* ¶ 7. In that case, the Court concluded that factual issues remained for jury determination. *Id.* ¶ 8. We reach a similar conclusion in the present case.

There was no factual stipulation between the State and Defendant. *See State v. Fernandez*, 2007-NMCA-091, ¶ 9, 142 N.M. 231, 164 P.3d 112 (refusing to apply *Foulenfont* because there was no fact stipulation and the case required a jury determination). Further, Defendant did not make an argument to the district court based on *Foulenfont*. *See Gomez*, 2003-NMSC-012, ¶ 7 ("Because [the d]efendant did not raise an argument under *Foulenfont,* it was unnecessary for the [s]tate to argue in the district court that it might be able to obtain additional evidence if the case were allowed to proceed to trial."). For these reasons, we hold that Defendant did not establish that only legal issues were before the trial court nor that dismissal was therefore appropriate under *Foulenfont*.

**C.    Access to Medical Records**

Defendant next maintains that the district court improperly denied his motion to access Victim's medical, psychological, and school records. [DS 6, 3] "We will not disturb the district court's ruling absent an abuse of discretion." *State v. Gonzales*, 1996-NMCA-026, ¶ 5, 121 N.M. 421, 912 P.2d 297. According to Defendant's

docketing statement, as well as the district court's notes, the district court reviewed the requested records in camera and released portions of the records to Defendant. [DS 3, RP 103, 160]  This is the procedure approved by this Court in *Gonzales*.  *Id.* ("The district court is in the best position to assess the probative value of challenged evidence as it relates to the facts before the court and to weigh that value against any interest in the confidentiality of records that may be subject to discovery.").

Defendant cites *State v. Payton*, 2007-NMCA-110, 142 N.M. 385, 165 P.3d 1161, for the proposition that his "right to confront and cross examine witnesses weighs heavily in favor of allowing introduction of relevant evidence, even in sex offense cases." [DS 8]  *Payton* explains that in certain situations, it is relevant that a particular victim has suffered from previous sexual abuse. *Id.* ¶ 14.  The district court appears to have agreed with Defendant that Victim's medical and sexual abuse history was relevant.  [RP 103]  As a result, the record indicates that the district court reviewed the medical records and released the relevant portions.  [RP 120, 160; DS 3]  Because the district court followed the correct procedure for the discovery of medical and psychological records, we affirm.  *Gonzales*, 1996-NMCA-026, ¶ 20 ("The proper procedure to determine relevance is that which was requested by Defendant and ordered by the district court:  in camera review.").  To the extent that Defendant argues that the records should have been released in their entirety, he fails

to articulate how he was prejudiced by the district court's partial release of records.

**D.      SANE Nurse Testimony**

At trial, the district court permitted a sexual assault nurse examiner to testify. [DS 4] Defendant argues that the State improperly called the nurse examiner to testify regarding evidence of injury when the injuries sustained were not related to the charged acts. [DS 7] For support, Defendant cites *State v. Ortega*, 2008-NMCA-001, 143 N.M. 261, 175 P.3d 929, and *State v. Romero*, 2006-NMCA-045, 139 N.M. 386, 133 P.3d 842. [DS 11] *Ortega* holds that statements to a sexual assault nurse examiner were testimonial and inadmissible because the Child who made the statements was not subject to cross examination. 2008-NMCA-001, ¶ 36. *Romero* simply concluded that statements to a sexual assault nurse examiner were testimonial and not admissible. 2006-NMCA-045, ¶ 61. There is no hearsay or confrontation issue in the present case, however, because Victim was available to and did testify.

The trial court agreed with Defendant that the nurse's testimony regarding injury was not relevant. In Defendant's docketing statement, he explains that "[t]he trial judge did exclude testimony regarding injuries but allowed testimony about dates." [DS 4] There was therefore no error by the trial court. Defendant's phrasing of the issue seems to acknowledge this: "Did the State err in calling the sexual assault nurse examiner[?]" [DS 7] We do not review the State's decisions to call certain

6

witnesses. Instead, we review the district court's decisions to allow those witnesses to testify. In the present case, the district court did not permit the witness to testify about irrelevant issues.

**E. Sufficiency of the Evidence to Support the Verdict**

Defendant further argues that there is not sufficient evidence to support the jury's verdict because Victim could not recall the date of alleged act of criminal sexual penetration or testify consistently regarding the location and circumstances of the act. [DS 7] "Substantial evidence is such evidence as is acceptable to a reasonable mind as adequate support for a conviction." *State v. Mankiller*, 104 N.M. 461, 465, 722 P.2d 1183, 1187 (Ct. App. 1986).

It is well established that where the indictment has alleged a specific time, that allegation is material and there must be evidence to locate the charged criminal act within the alleged time period. *Id.* at 464-65, 722 P.2d at 1186-87. The criminal complaint charges that the incidents occurred "on or about the 6th and 7th day of November 2007." [RP 010] Defendant's argument appears to rest on two pieces of evidence: (1) that the child could not recall the date of the alleged act and (2) that another witness placed the date of the occurrences no later than November 5, 2007. [DS 5] In *Mankiller*, the testimony established that the defendant was in the correct city during the month surrounding the charged dates. *Id.* at 465, 722 P.2d at 1187.

The victim also testified that the incidents happened in the same month. *Id.* Based on this testimony, this Court determined that there was sufficient evidence to support a conviction for incidents alleged to have happened on or about a certain date—even though the actual dates alleged in the indictment were shown to be incorrect. *Id.* at 464-65, 722 P.2d at 1186-87. Victim's mother provided additional testimony that Victim was at Defendant's house from November 2 through November 7. [DS 5] We therefore hold that substantial evidence supported the alleged time frame.

Defendant also contends that insufficient evidence supported the verdict because Victim failed to testify consistently regarding the location or the circumstances of the event. [DS 7] *State v. Sena*, 2008-NMSC-053, 144 N.M. 821, 192 P.3d 1198, however, explains that conflicting testimony is to be resolved by the jury. *Id.* ¶ 11. It appears that Victim testified and provided a version of events that was at odds with her pretrial statements. [DS 4-5] Nevertheless, Defendant had an opportunity to cross-examine her regarding these inconsistencies. In addition, he took the stand himself, in order to offer his own explanation of the events. [DS 6] Our Supreme Court has explained that "[a]ppellate courts faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the [prevailing party], and must defer to that resolution." *Id.* ¶ 11

(alterations in original) (internal quotation marks and citation omitted). As a result, we also hold that substantial evidence supported the location and the circumstances of the charges.

**G.      Sentence Mitigation**

Defendant next argues that the district court erred by concluding that there was insufficient evidence to warrant mitigation of the sentence. [DS 7-8] "We review the trial court's sentencing for an abuse of discretion." *State v. Aker*, 2005-NMCA-063, ¶ 8, 137 N.M. 561, 113 P.3d 384. At the post-conviction hearing, Defendant offered the testimony of Dr. Moss Aubrey. [DS 6] Dr. Aubrey testified that "Defendant's conduct stemmed primarily from his dependent and avoidant personality disorder, and not from an entrenched predatory sexual interest in young girls." [DS 6] Further, the doctor opined that "adjustment would be made more difficult the longer [Defendant] is incarcerated." [DS 6]

The district court sentenced Defendant to 18 years in prison for one count of sexual penetration of a minor, which is a first degree felony. [RP 197] *See* NMSA 1978, § 30-9-11(D)(1) (2007). The basic sentence for a first degree felony is 18 years imprisonment. NMSA 1978, § 31-18-15(A)(3) (2007). The sentence, therefore, was not contrary to law. It has been made clear that "[r]egardless of what mitigating evidence [the d]efendant presented, the statutory scheme does not require the trial

court to depart from the basic sentence." *State v. Gardner*, 2003-NMCA-107, ¶ 42, 134 N.M. 294, 76 P.3d 47. Further, "[i]t is settled law in this jurisdiction that a suspended sentence is a matter of judicial clemency to which a defendant may never claim entitlement." *State v. Sosa*, 122 N.M. 446, 448, 926 P.2d 299, 301 (1996). We therefore hold that the district court did not abuse its discretion by refusing to mitigate Defendant's sentence. *See id.* ("[W]e cannot see how failure to suspend a statutorily-prescribed sentence can ever be characterized as anything other than a refusal to grant leniency." (internal quotation marks and citation omitted)).

**F.    Rebuttal Witness**

After Defendant rested his case at trial, the State called a rebuttal witness in order to rebut a portion of Defendant's testimony. [DS 6] Defendant's testimony had suggested that Victim was not at the home during the time period that the acts allegedly took place. [DS 6] This testimony contradicted the statements of Victim's mother—who had also been a witness. [DS 6] The rebuttal witness testified as to the honesty of Victim's mother. [DS 6] Defendant attempted to "offer proof that [Victim's mother] had been investigated for fraudulent child custody/support issues." [DS 6] The district court did not permit Defendant to offer that evidence. [DS 6] Defendant argues that the district court should not have permitted the rebuttal witness to testify and that, further, the district court should not have limited the scope of

Defendant's cross-examination of the rebuttal witness. [DS 8] "The admissibility of rebuttal evidence is within the discretion of the trial court and will not be disturbed absent an abuse of that discretion." *State v. Simonson*, 100 N.M. 297, 302, 669 P.2d 1092, 1097 (1983).

"Genuine rebuttal evidence consists of evidence on new matters asserted in the defense's case." *Id.* Based on the statement of facts in Defendant's docketing statement, the character evidence was offered in attempt to address the issue of Victim's mother's credibility, which was raised during Defendant's presentation of his case. "The [s]tate is entitled to correct false impressions given to a jury by the defense through rebuttal testimony." *Id.* The district court therefore did not abuse its discretion by permitting the rebuttal witness to testify.

It is also within the court's discretion to limit the cross-examination of a rebuttal witness. *See State v. Ewing*, 97 N.M. 235, 237-38, 638 P.2d 1080, 1082-83 (1982). Rule 11-608(B) NMRA states that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Rule 11-609 [NMRA], may not be proved by extrinsic evidence." Rule 11-608 also explains that a party may inquire into specific instances of the conduct of a witness on cross-examination "if probative of truthfulness or untruthfulness." Defendant did not attempt to cross-

11

examine the rebuttal witness about the specific instance of conduct—Victim's mother's history of fraud. Instead, he tried to offer extrinsic evidence of the investigation of fraud. Such an offer is not permitted under Rule 11-608.

Rule 11-609(A) permits a party to attack the character for truthfulness of a witness with "evidence that any witness has been convicted of a crime . . . if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness." In the present case, Defendant attempted to offer extrinsic evidence that the witness—Victim's mother—had been *investigated* for fraud. Although this evidence of fraud would cast a shadow on the witness's honesty, Defendant's docketing statement indicates that she was not convicted of fraud. [DS 6] As a result, Rule 11-609(B) does not permit the introduction of extrinsic evidence to prove a specific instance of conduct.

For the reasons set forth above, we affirm.

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

12

_____

**JONATHAN B. SUTIN, Judge**



_____

**MICHAEL E. VIGIL, Judge**