This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37413**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JOSHUA GRANTHAM,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Lisa B. Riley, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Todd B. Hotchkiss, Attorney at Law, LLC
Todd B. Hotchkiss
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}**    Defendant Joshua Grantham, appeals his convictions for trafficking a controlled substance, contrary to NMSA 1978, Section 30-31-20 (2006), and possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1(A) (2001, amended 2019). Defendant raises two issues on appeal (1) that his Sixth Amendment right to counsel was violated and (2) reversal is required because of a difference between the date in the criminal information and the actual date of the offenses. We affirm.

**BACKGROUND**

**{2}** On July 15, 2014, the officers of the Pecos Valley Drug Task Force (PVDTF), executed a search warrant on Defendant's house and found twenty five grams of heroin, syringes, a digital scale, and plastic baggies. Defendant was handcuffed, Mirandized, and questioned by Deputy David Whitzel. During questioning Defendant admitted to possessing heroin and to fronting heroin to a friend. Defendant was subsequently charged but the criminal information mistakenly alleged that each offense occurred on July 7, 2014.

**{3}** Six witnesses testified at trial including Defendant. At the close of trial the jury convicted Defendant of trafficking by possession with intent to distribute and possession of drug paraphernalia. This appeal followed. We discuss additional facts as they relate to issues presented.

**DISCUSSION**

**I. The District Court Did Not Err In Denying Defendant's Motion to Suppress**

**{4}** Defendant argues that his Sixth Amendment right to counsel was violated when the PVDTF questioned him after his arrest and as a result, statements he made to Deputy Whitzel should have been suppressed. Specifically, Defendant contends that Deputy Whitzel questioned him about a crime for which "adversarial [judicial] proceedings were initiated." Our review of motions to suppress represents "a mixed question of law and fact." *State v. Davis*, 2018-NMSC-001, ¶ 10, 408 P.3d 576 (internal quotation marks and citation omitted). "We review the factual analysis for substantial evidence and review the legal analysis de novo." *Id*.

**{5}** The Sixth Amendment to the United States Constitution provides that: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." Right to counsel under the Sixth Amendment ordinarily attaches when judicial criminal proceedings have been initiated, "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *See Kirby v. Illinois*, 406 U.S. 682, 689 (1972) (plurality opinion) (noting that the right to counsel attaches when government begins "adversary judicial criminal proceedings"); *see also Rothgery v. Gillespie Cty., Tex*, 554 U.S. 191, 194, 198 (2008) (reaffirming that the right to counsel attaches at the initiation of adversarial judicial criminal proceedings, explicitly tying the Sixth Amendment right to counsel to "the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty"); *State v. Aragon*, 1990-NMCA-001, ¶ 10, 109 N.M. 632, 788 P.2d 932 (stating the right to counsel "ordinarily attaches when judicial proceedings have been initiated, by way of formal charge, preliminary hearing, indictment, information, or arraignment"). Further, the United States Supreme Court has never held that the right to counsel attaches at arrest. *See United States v. Gouveia*, 467 U.S. 180, 190 (1984) (commenting that "we have never held that the right to counsel attaches at the time of arrest").

**{6}** Consistent with federal law, our State jurisprudence has held that the initiation of adversarial judicial criminal proceedings is the time at which the Sixth Amendment right to counsel attaches. *See State v. Rivas*, 2017-NMSC-022, ¶ 39, 398 P.3d 299 (stating that once the adversary judicial process has been initiated the Sixth Amendment guarantees the defendant the right to counsel); *State v. Kanikaynar*, 1997-NMCA-036, ¶ 14, 123 N.M. 283, 939 P.2d 1091 ("Without question, the right to counsel guaranteed by the [S]ixth [A]mendment to the United States Constitution does not attach until formal charges are initiated." (internal quotation marks and citation omitted)); *Aragon*, 1990-NMCA-001, ¶ 10 ("[The Sixth Amendment] right [to counsel] ordinarily attaches when judicial proceedings have been initiated, by way of formal charge, preliminary hearing, indictment, information, or arraignment.").

**{7}** Here, adversarial proceedings against Defendant had not been initiated when he was questioned by Deputy Whitzel on July 15, 2014. We explain.

**{8}** The facts developed at the motion to suppress hearing in which Defendant raised a Sixth Amendment violation claim revealed the following. Prior to July 15, 2014, Defendant hired an attorney to negotiate a confidential informant agreement with the task force. Deputy Jeffery Clifton met with Defendant's attorney in March 2014 to negotiate an informant agreement. However, no agreement was entered between the PVDTF and Defendant prior to July 15, 2014. On July 15, 2014, Deputy Whitzel was unaware of Defendant's efforts to negotiate a confidential informant agreement with the PVDTF. In addition Defendant never stated that he had an attorney nor did he request to speak with an attorney during his July 15, 2014, interview by Deputy Whitzel.

**{9}** The district court denied Defendant's motion to suppress finding among other things, that Defendant was not working with the PVDTF on July 15, 2014; no criminal charges were pending against Defendant at the time of his July 15, 2015, questioning; Defendant had been properly Mirandized and Defendant never requested an attorney or that questioning be stopped.

**{10}** Because adversarial judicial proceedings against Defendant had not been initiated on July 15, 2014, we conclude that his Sixth Amendment right to counsel had not attached, and affirm the denial of Defendant's motion to suppress.

**{11}** In asserting his Sixth Amendment claim, Defendant relies upon a pre-*Miranda* case, *Escobedo v. Illinois*, 378 U.S. 478 (1964). Defendant asserts that *Escobedo* recognizes that the right to counsel is not "predicated on whether a formal indictment [has] occurred." Defendant's reliance on *Escobedo* is unavailing. Later authority made clear that *Escobedo* applies only to a defendant's Fifth Amendment rights. *See Moran v. Burbine*, 475 U.S. 412, 429 (1986) ("At the outset, subsequent decisions foreclose any reliance on *Escobedo* and *Miranda* for the proposition that the Sixth Amendment right, in any of its manifestations, applies prior to the initiation of adversary judicial proceedings."). Thus, *Escobedo* does not support Defendant's claim that his Sixth Amendment right to counsel was violated.

**{12}** To the extent Defendant argues that his engagement of counsel to negotiate a confidential informant agreement with the PVDTF triggered Sixth Amendment protections, we are unpersuaded. No formal information or indictment had been filed in any of the prior investigations giving rise to the confidential informant negotiations, thus, under our analysis the right to counsel had not yet attached. Even had formal charges been filed the Sixth Amendment right to counsel would not have applied to Defendant's statements in this case. *See Rivas*, 2017-NMSC-022, ¶ 40 ("The Sixth Amendment right is narrower in at least one sense—it is offense-specific, unlike *Miranda*'s Fifth Amendment right against self-incrimination—and is thus of no help with respect to questioning regarding matters not yet subject to adversarial proceedings.").

**{13}** Finally, to the extent Defendant argues that adversarial proceedings were initiated by the execution of a search warrant he failed to provide us with any authority in support of his contention. To the contrary, our case law explicitly distinguishes between the functions of law enforcement and those of prosecution. *See State v. Sandoval*, 1984-NMCA-053, ¶ 14, 101 N.M. 399, 683 P.2d 516 (rejecting a claim that right to counsel attached when police issued citations after arresting the defendants for driving while intoxicated: "[a] bright line must be drawn between the authority invested in the [s]tate's law enforcement officers and that invested in the [s]tate's prosecutors"). Issuance of a search warrant does not mark the beginning of adversarial judicial proceedings, but rather, represents judicial oversight of law enforcement's investigative activities. *See State v. Wagoner*, 1998-NMCA-124, ¶ 9, 126 N.M. 9, 966 P.2d 176 (stating that "[t]he chief function of the warrant requirement is to permit a judge to oversee the investigative activities of law enforcement officers").

## II. The Difference Between the Offense Date In the Criminal Information and the Actual Date of Offense Does Not Require Reversal

**{14}** Defendant's contention and applicable standards are unclear. We understand his argument to be that the difference in the offense date in the information (July 7, 2014) and the actual date of the offense (July 15, 2014) warrant reversal. We are not persuaded.

**{15}** Rule 5-204(C) NMRA provides that:

> No variance between those allegations of a complaint, indictment, information or any supplemental pleading which state the particulars of the offense, whether amended or not, and the evidence offered in support thereof shall be grounds for the acquittal of the defendant unless such variance prejudices substantial rights of the defendant. The court may at any time allow the indictment or information to be amended in respect to any variance to conform to the evidence. If the court finds that the defendant has been prejudiced by an amendment, the court may postpone the trial or grant such other relief as may be proper under the circumstances.

"We review a district court's interpretation and application of Rule 5-204 de novo." *State v. Branch*, 2010-NMSC-042, ¶ 19, 148 N.M. 601, 241 P.3d 602, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37, 275 P.3d 110.

**{16}**  "A criminal indictment or information need not contain exacting detail as long as the defendant is given sufficient notice of the charges." *State v. Stevens*, 2014-NMSC-011, ¶ 50, 323 P.3d 901; *State v. Cawley*, 1990-NMSC-088, ¶ 13, 110 N.M. 705, 799 P.2d 574 (recognizing accused's right to be apprised of the charge against him and that not all charging documents need to establish the time or date of the offense); *State v. Baldonado*, 1998-NMCA-040, ¶¶ 18-21, 124 N.M. 745, 955 P.2d 214 (recognizing the need to reconcile a defendant's "due process right to reasonable notice of the charges" and difficulties arising from the prosecution of criminal sexual charges committed against children that often have difficulty remembering precise dates of crimes committed against them); *accord* Rule 5-205(A)(1) NMRA ("It shall be unnecessary for a complaint, indictment or an information to contain the [time of the commission of the offense] unless such allegations are necessary to give the defendant notice of the crime charged[.]").

**{17}**  In this case the information alleged a July 7, 2014, offense date. The actual events lending to the information took place on July 15, 2014. Before trial, in anticipation of the State's evidence, Defendant filed a motion in limine in which he asserted that his criminal prosecution resulted from a "July 15, 2014 raid." During trial the audio recording of Defendant's statements made on July 15, 2014, was played for the jury and photo exhibits of the items found in Defendant's home on that date were entered into evidence.

**{18}**  Although Commander Lenin Leos of the PVDTF initially stated that the search and arrest occurred on July 7, 2014, he later testified that the date may have been July 15, 2014. Similarly, Deputy Whitzel and Officer Jorge Martinez, testified that the date of the search involving Defendant was July 15, 2014.

**{19}**  After resting its case, the State advised the district court and Defendant that it had amended the jury instructions to reflect an offense date of July 15, 2014, effectively amending the information. Defendant made no objection to the amended instructions and made no claim of prejudice before presenting his case. Defendant testified on his own behalf and referred to the date of the search as July 15, 2014.

**{20}**  We therefore conclude that Defendant had sufficient notice of the charges and he provides no evidence to the contrary. Moreover it is established that a formal amendment to the charging document is not required.

**{21}**  Defendant cites *State v. Mankiller*, 1986-NMCA-053, 104 N.M. 461, 722 P.2d 1183, arguing that the date in the criminal information became a material allegation of the offenses charged, such that the State was precluded from establishing Defendant's guilt based on a different date. In *Mankiller* we held that the date of the offense was material to the defense where the defendant could not have anticipated from the date

specified in the indictment that the state would present evidence that the crime occurred nearly two months later. *Id.* ¶ 17. In contrast, and as we previously noted, Defendant filed a pre-trial motion in limine in which he asserted that his criminal prosecution resulted from a "July 15, 2014 raid" demonstrating that he was on notice that the State would be presenting evidence to prove that his crimes occurred on July 15, 2014.

{22}   We therefore find no error in the amendment to the information and conclude that the jury was properly instructed that it had to find that the offenses were committed on July 15, 2014. For the reasons above Defendant's claims of insufficient evidence based on the offense date, and plain or fundamental error are without merit.

**CONCLUSION**

{23}   For the reasons set forth above, we affirm Defendant's convictions. We remand to the district court for correction of the judgement and sentence to reflect the correct offense date.

**{24}   IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Judge**

**JULIE J. VARGAS, Judge**